IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**GERARDO JIMENEZ,**

        Plaintiff,

vs.                                        Civ. No. 03-0902 RB/LCS

**DANIEL DRAUGHON and
STATE FARM INSURANCE COMPANY,**

        Defendants.

## RECOMMENDED FINDINGS AND CONCLUSIONS OF LAW

**THIS MATTER** came before the Court at an Evidentiary Hearing on December 16-17, 2003 before the Honorable Leslie C. Smith, United States Magistrate Judge. After hearing the testimony of Mr. Sherman and Mr. Piazza and having reviewed the entire record, I make the following recommended findings of fact and conclusions of law.

**I.**     **Background**

Plaintiff's claim against Defendant Draughon arises out of an automobile accident that occurred on September 27, 1997. Defendant Draughon was insured by State Farm Insurance Company and had a $50,000 policy limit on the injuries Plaintiff sustained. The Sixth Judicial District Court appointed a *Guardian ad Litem* to protect Plaintiff's interest. In 1998, State Farm offered its policy limit in an attempt to settle the matter. The settlement was subject to the court's approval, which was never given.

After Plaintiff reached majority in 2003, Plaintiff retained Frederick Sherman, Esq. as counsel. Mr. Sherman and Mr. Piazza, counsel for Defendant Draughon, worked toward resolving the matter through a settlement agreement. It is Plaintiff's view that settlement was never reached and thus

Plaintiff filed suit in state court and Defendants removed the action to the United States District Court for the District of New Mexico on August 4, 2003.  Doc. 1  On October 6, 2003 Defendant Draughon filed a Motion to Enforce the Settlement Agreement and an Alternative Request for Evidentiary Hearing.  Doc. 7.  Defendant alleges that the parties had reached a "full and fair settlement" of Plaintiff's claim against Defendant for the amount of $50,000.  *Id.*  Under the Order of Reference, I was given the authority to conduct an "evidentiary hearing and to perform any legal analysis required to recommend to the Court an ultimate disposition of this motion."  Doc. 21.  The Evidentiary Hearing was held on December 16-17, 2003 and both Mr. Sherman and Mr. Piazza testified at the hearing.

## II.     Findings of Fact and Conclusions of Law

Beginning in September 2002, Mr. Sherman corresponded with Mr. Piazza with regard to settling the matter.  The crux of the dispute between the parties as to whether settlement was reached appears to be the inclusion of a creditor, R.E. Thomason Hospital, as a payee on the settlement check.

In a letter dated March 10, 2003, Mr. Sherman stated that he would accept a settlement of $50,000 and that the "check would have to be made payable to [Mr. Jimenez]. . .so that we can either settle with the health care providers or institute a Sutherland equitable proceeding to have all take an equal share of the limited fund."  Ex. 2.  In a letter dated March 25, 2003, Mr. Piazza noted receipt of Mr. Sherman's March 10, 2003 letter and stated that ". . .State Farm will tender a check a check in the amount of $50,000.00 made payable to Gerardo Jimenez. . . and R. E. Thomason Hospital."  Ex. 3.  Further correspondence on May 12, 2003 shows that Mr. Sherman deleted the indemnification wording in the Release form because he was "not aware of any authority that would obligate [Mr. Piazza] for such sums beyond the Federal liens..."  Ex. 4.  Mr. Piazza expressed that the line outs

would be unacceptable in a June 9, 2003 letter. Ex. 7. After a telephone conversation on June 12, 2003, Mr. Piazza sent a letter to Mr. Sherman accepting Plaintiff's modifications and sent a check made payable to Gerardo Jimenez **and** R. E. Thomason as a lien holder. Ex. 8. Mr. Sherman did not cash the check and testified that he returned it when Mr. Piazza requested that it be returned. Tr. 27.

While Mr. Sherman never specifically mentioned in his correspondence that he objected to the inclusion of R.E. Thomason as a payee, his correspondence expresses his objection to *any* creditor being listed as a payee. *See* Ex. 2, 4. Mr. Sherman testified that his understanding of the letter was that the indemnification clause be deleted "so that no creditors, including R.E. Thomason, including any other creditors, none are to be included." *Id.* Despite the fact that Mr. Piazza stated in his letter dated on March 25, 2003 that R. E. Thomason Hospital would be listed as a payee, there was no agreement to this material term and without such an agreement, there can be no enforceable settlement agreement. Further, while Mr. Piazza testified that he accepted the line outs, Defendants could not have accepted Mr. Sherman's modifications after they had already rejected them. Tr. 12-13. By the time Mr. Piazza attempted to accept the modifications on behalf of Defendants, the offer was no longer open; it had been rejected by the June 9, 2003 letter. *See* RESTATEMENT (SECOND) OF CONTRACTS § 38 (1981).

The exhibits and testimony are clear that the parties never reached an agreement on whether R.E. Thomason would be a payee. As I stated at the hearing, "It appears to me that a material term of this contract would have to be inclusion of all the payees on the check. In my view the parties would have to have agreed that Thomason would have to be on the check. In the absence of that agreement, that term would either have to be included as a matter of law, or Mr. Sherman would have to say 'Yes, we all agree on that,' and my understanding. . .is, he never agreed that Thomason be placed on the check. Tr. 17-18. I so find.

Defendants were given the opportunity to file a post-hearing brief for the explicit purpose of citing authority that would support the theory that R.E. Thomason was to be included as a payee on the check as a matter of law. Tr. 35.  On December 29, 2003 Defendants filed a Post-Hearing Brief (Doc. 32) but did not include any authority that supported this theory.  In reviewing a settlement agreement, the burden is on the movant to show that the settlement was enforceable. *See Western Commerce Bank v. Gillespie*, 108 N.M. 535 (N.M. 1989).  Defendants have not met their burden and I recommend that the Motion to Enforce the Settlement Agreement (Doc. 8) filed October 6, 2003 be denied.

On January 29, 2004 Defendants filed a Post-Hearing Amended Motion to Enforce the Settlement Agreement ("Amended Motion").  Doc. 37.  I will not entertain the Amended Motion. In that Motion, Defendants have introduced the principle of mutual mistake and have requested reformation and specific performance of the settlement agreement.  The original Motion to Enforce the Settlement Agreement was filed on October 6, 2003.  Doc. 7.  On December 1, 2003, I was given authority by the Order of Reference to conduct an evidentiary hearing.  Doc. 21.  The Evidentiary Hearing took place on December 16-17, 2003.  I allowed Defendants to file a post-hearing brief, which they did on December 29, 2003.  Doc. 32.  Defendants have had ample time to present the theory of mutual mistake.  It was not presented prior to, at, or immediately subsequent to the evidentiary hearing and the memorandum makes no citation to the proceedings to support this theory. Defendants have had a full and fair opportunity to explore mutual mistake and will not be allowed to introduce this argument now.

**II    Recommendation**

I recommend that the Motion to Enforce the Settlement Agreement (Doc. 8) filed October

6, 2003 be denied. Further, Plaintiff's Motion to Require Advance Notice of Evidence to be Presented at the Hearing or to Allow Subsequent Hearing to Supplement the Record (Doc. 25) and Plaintiff's Motion for Leave of Court to File a Surreply, or in the Alternative to Strike the New Arguments in made in the Reply Brief (Doc. 18) should be denied as moot  Objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**